UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **LARRY FORD BANISTER II,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 17 C 8940** |
| v. | ) | |
| | ) | **Chief Judge Rubén Castillo** |
| **JEFFREY STEWART FIRESTONE,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | | |

## MEMORANDUM OPINION AND ORDER

In this case, Larry Ford Banister II ("Plaintiff") sues Jeffrey Stewart Firestone

("Firestone"), Hongmei Chen a/k/a Lily Liu ("Chen"), and Chengze Liu a/k/a Eric Liu ("Liu")

(collectively "Defendants") asserting violations of the Copyright Act, 17 U.S.C. § 101 *et seq.*,

and related state law claims. (R. 18, Am. Compl.) Firestone moves to dismiss on various grounds

and to vacate the preliminary injunction entered by this Court. (R. 28, Mot. to Dismiss; R. 29,

Mot. to Vacate.) Plaintiff, in turn, moves to compel Firestone's responses to discovery. (R. 45,

Mot. to Compel.) For the reasons stated below, Firestone's motions are denied, and Plaintiff's

motion is granted in part and denied in part.

## BACKGROUND

Plaintiff is an attorney licensed to practice law by the State of New York. (R. 18, Am.

Compl. ¶ 3.) He is also admitted to the general bar of this District. (*Id.*) Plaintiff focuses his

practice on the defense of trademark claims brought under the Lanham Act, 15 U.S.C. § 1114 *et*

*seq.*, and he regularly represents Chinese defendants in cases brought in this District by the

Chicago-based intellectual property firm Greer, Burns, and Crain ("GBC"). (*Id.* ¶ 4.) In order to

make the public aware of his legal services, he maintains a website at

www.trademarkviolation.us. (*Id.*) The website, available in both English and Mandarin, includes a blog comprised of content created exclusively by Plaintiff. (*Id.*)

Firestone is an attorney licensed in the State of Illinois and a member of the trial bar in this District. (*Id.* ¶ 5.) He, like Plaintiff, regularly represents Chinese defendants in trademark infringement cases brought by GBC in this District. (*Id.*) Plaintiff alleges that on or about August 31, 2017, Chen and Liu[1] registered the domain www.gbclegalaid.us. (*Id.* ¶ 6.) He claims that the website was for a fictitious law firm called "J & L Intellectual Property Law Office," (*id.* ¶ 13), and contained content taken from Plaintiff's website "in a cut and paste fashion," (*id.* ¶¶ 8-9, 15). This included the "FAQ" section of Plaintiff's homepage and his blog spots entitled: "Did I Infringe a Trademark"; "U.S. Trademark Litigation Process; "The Consequences of Not Answering a U.S. Trademark Violation Suit"; "Jurisdiction for U.S. Trademark Violations"; and "Don't Blame PayPal." (*Id.* ¶¶ 9, 15.) He claims that the copied material even contained his logo and stated that the content had been produced by him for purposes of attorney advertising. (*Id.* ¶ 25.)

According to Plaintiff, Defendants "own, operate and/or share interest in the Infringing Website for the purpose of soliciting fees for the purported provision of legal services from defendants in suits filed in this judicial district" by GBC alleging trademark infringement by online retailers. (*Id.* ¶ 8.) He claims that Firestone entered into an agreement with Chen and Liu

---

[1] At the time the complaint was filed, Plaintiff did not know the identity of the individual or individuals who had created the website, and instead he identified the Defendants simply as "Does No. 1-10." (R. 1, Compl. at 1.) He suspected, although was unsure, that Firestone might be involved, given that the website included some of Firestone's biographical information and listed his post office box in New York (the same address he lists on his filings in this case) as the contact for the website. (R. 5, Pl.'s Decl.; R. 5-1, Website at 4-16; *see also* R. 40, Am. Mem. in Supp. of Mot. to Vacate at 14.) Through investigation, Plaintiff gained additional information suggesting that the website had been created by Chen and Liu with the involvement of Firestone. (*See* R. 22, Pl.'s Second Decl. ¶¶ 2-12.) Thereafter, he filed an amended complaint naming each of them as Defendants. (R. 18, Am. Compl.)

in which Chen and Liu would solicit clients through the website using the name of the fictitious law firm, and would then refer clients to Firestone, for which Firestone would pay Chen and Liu a portion of the fees he collected. (*Id.* ¶ 14.) He further claims that Defendants posted the materials from his website on their own website "for the purpose of making themselves appear knowledgeable in American intellectual property law[.]" (*Id.* ¶ 20.)

Based on these events, Plaintiff filed this action in December 2017 asserting claims under the Copyright Act, as well as the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILL. COMP. STAT. 510/1 *et seq.*, and the Illinois Attorney Act ("IAA"), 705 ILL. COMP. STAT. 205/1 *et seq.* (R. 1, Compl. ¶¶ 12-27.) A few days after the complaint was filed, Plaintiff moved for a temporary restraining order ("TRO"). (R. 6, Mot. for TRO.) At a hearing held on December 20, 2017, the Court granted Plaintiff's motion and entered a TRO. (R. 11, TRO.) Among other things, the TRO required Defendants to cease using Plaintiff's copyrighted works and to disable the disputed website. (*Id.* ¶¶ 1-2.) The TRO also authorized Plaintiff to notify Defendants of these proceedings via email. (*Id.* ¶ 8.) The Court set a further status hearing on January 3, 2018. (R. 10, Order.) At the hearing on January 3, 2018, the Court granted Plaintiff's request to extend the TRO and set a further status on January 18, 2018. (R. 15, Min. Entry.)

On January 12, 2018, Plaintiff filed an amended complaint alleging copyright infringement by all Defendants, and violations of the ICFA and IAA by Chen and Liu. (R. 18, Am. Compl.) Plaintiff seeks monetary damages, injunctive relief, attorneys' fees, and other relief. (*Id.*) On that same date, Plaintiff separately moved for entry of a preliminary injunction, which he noticed for January 18, 2018. (R. 19, Mot. for Prelim. Injunction; R. 20, Notice of Motion.) On January 16, 2018, Defendants were served with the summons and complaint. (R. 26,

Summons Returned Executed.) On January 18, 2018, the Court held a hearing and converted the TRO into a preliminary injunction. (R. 25, Prelim. Inj. Order.) None of the Defendants appeared. (R. 24, Order.)

On February 7, 2018, Firestone filed an appearance through counsel. (R. 27, Appearance.) He moved to dismiss the amended complaint on various grounds and separately moved to vacate the preliminary injunction.[2] (R. 27, Appearance; R. 28, Mot. to Dismiss; R. 29, Mot. to Vacate.) In his motion to dismiss, he argues that Plaintiff has failed to state a claim and that the Court lacks personal jurisdiction over him. (R. 39, Am. Mem. in Support of Mot. to Dismiss.) In support of the motion to vacate, he argues that Plaintiff has failed to demonstrate an entitlement to preliminary injunctive relief and that the injunction was entered "without due process of notice." (R. 40, Am. Mem. in Supp. of Mot. to Vacate.) Plaintiff responds that he has adequately stated a claim for relief under federal pleading standards and that the Court can properly exercise personal jurisdiction over Firestone given his contacts with this forum. (R. 41, Resp. to Mot. to Dismiss.) Plaintiff further argues that the preliminary injunction was properly entered and that such relief was necessary given Defendants' ongoing use of his copyrighted material. (R. 42, Resp. to Mot. to Vacate.) Both motions are now fully briefed. (R. 43, Reply in Supp. of Mot. to Dismiss; R. 44, Reply in Supp. of Mot. to Vacate.)

In March 2018, Plaintiff moved to compel discovery responses from Firestone, arguing that he had failed to answer Plaintiff's request for the production of documents and interrogatories served on him in January 2018. (R. 45, Mot. to Compel.) Firestone filed an opposition to the motion and also filed discovery responses, (R. 49, Resp. to Mot. to Compel;

---

[2] Firestone's supporting memoranda filed on that date were stricken by the Court for technical reasons, (R. 38, Min. Entry), but with the Court's permission, he filed amended memoranda on February 25, 2018. (R. 39, Am. Mem. in Supp. of Mot. to Dismiss; R. 40, Am. Mem. in Supp. of Mot. to Vacate.)

R. 51-1, Disc. Resps.), but Plaintiff deems his responses inadequate in many respects. (R. 51, Reply in Supp. of Mot. to Compel.) This motion is also ripe for adjudication.

**ANALYSIS**

I.      **Firestone's Motion to Dismiss**

     A.      **Failure to State a Claim**

Firestone first requests that Plaintiff's copyright claim be dismissed under Federal Rule of Civil Procedure 12(b)(6). (R. 39, Am. Mem. in Supp. of Mot. to Dismiss at 6-9.) To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation, internal quotation marks, and alteration omitted). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679. In evaluating a motion to dismiss, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in Plaintiff's favor. *Tobey v. Chibucos*, 890 F.3d 634, 645 (7th Cir. 2018).

In support of his motion to dismiss, Firestone argues that "the claims leveled against the Defendant, Firestone, have no factual basis as no relevant and concrete evidence has been tendered" showing that he was involved in the creation or operation of the website. (R. 39, Am.

5

Mem. in Supp. of Mot. to Dismiss at 12.) He argues that he was "totally unaware of the existence of the website" and would "never be involved in drafting any infringement as described in the pleadings." (*Id.* at 4, 6.) In support he cites to his own affidavit and an affidavit he obtained from Liu taking responsibility for the creation of the website, in addition to a printout of an online "WeChat" exchange he had with Plaintiff approximately a month before this case was filed. (*Id.* at 4-6.) He argues that "[a]ny argument that Firestone would hire or be formally involved with an unsophisticated Chinese referral service or a fictive law firm to build an infringing website is not credible." (*Id.* at 8.)

Firestone misunderstands the nature of a Rule 12(b)(6) motion. In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept Plaintiff's allegations as true and make all reasonable inferences in Plaintiff's favor. *Tobey*, 890 F.3d at 645. The Court cannot consider evidence outside the complaint, nor is it appropriate for the Court to decide at the pleading stage what actually occurred or whose account is more credible. *See* FED. R. CIV. P. 12(d) (providing that the Court cannot consider outside materials when deciding a motion to dismiss under Rule 12(b)(6)); *Ashcroft*, 556 U.S. at 679 (observing that "a court should assume [the] veracity" of the plaintiff's allegations in deciding a Rule 12(b)(6) motion); *Lucas v. Ferrara Candy Co.*, No. 13 C 1525, 2014 WL 3611130, at *2 n.6 (N.D. Ill. July 22, 2014) (rejecting the defendants' "attack" on the credibility of plaintiff's claims, which "misunderstands the posture of a motion under Rule 12(b)(6), in which a court tests the sufficiency, but not the credibility, of factual assertions"). The sole question is whether Plaintiff's allegations, taken as true, state a plausible claim for relief. *Ashcroft*, 556 U.S. at 678. The Court readily concludes that Plaintiff's allegations meet that standard.

The Copyright Act grants copyright owners the exclusive right to reproduce their copyrighted works. 17 U.S.C. § 106(a). To establish a claim for copyright infringement, a plaintiff must show: "(1) ownership of a valid copyright; and (2) unauthorized copying of constituent elements of the work that are original." *Hobbs v. John*, 722 F.3d 1089, 1094 (7th Cir. 2013) (citation omitted). Unauthorized copying may be proved with either direct evidence, such as an admission of copying, or more commonly, "by showing that the defendant had the opportunity to copy the original (often called 'access') and that the two works are 'substantially similar,' thus permitting an inference that the defendant actually did copy the original." *Peters v. West*, 692 F.3d 629, 633 (7th Cir. 2012). Plaintiff alleges that he had certain copyrighted material on a publicly available website and that Firestone and the other Defendants "cut and paste[d]" this material onto their own website (including his logo and attorney advertising disclaimer) without his permission for their own financial gain. (R. 18, Am. Compl. ¶¶ 15, 21-29.) The Court finds these allegations sufficient to state a claim for relief under the Copyright Act.[3] Firestone's denials of wrongdoing and his demand for "evidence" must wait for later stages of the litigation.

Firestone makes a cursory reference to the Court's ability to convert a motion to dismiss into a motion for summary judgment. (R. 39, Am. Mem. in Supp. of Mot. to Dismiss at 10.) It is true that the Court has discretion to take such action. *See generally* FED. R. CIV. P. 12(d); *Hecker v. Deere & Co.*, 556 F.3d 575, 582-83 (7th Cir. 2009). But the Court is not required to take this step, and declines to do so here. This case is still in the preliminary stages, and indeed, Firestone

---

[3] Firestone raises additional arguments attacking the validity of the state claw claims. (R. 39, Am. Mem. in Supp. of Mot. to Dismiss at 14; R. 43, Reply in Supp. of Mot. to Dismiss at 13-14.) However, he is not named as a Defendant in those claims. (R. 18, Am. Compl. ¶¶ 30-41.) He has not filed an appearance as counsel on behalf of Chen or Liu (indeed, these Defendants have never appeared or answered), and he has no authority to raise arguments on their behalf. *See* 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel[.]"); *Lewis v. Lenc-Smith Mfg. Co.*, 784 F.2d 829, 830 (7th Cir. 1986) ("[I]t is clear that an individual may appear in the federal courts only *pro se* or through counsel."). Accordingly, the Court does not address these arguments.

has never even answered the amended complaint. He was obligated to do so in accordance with the Mandatory Initial Disclosure Pilot Program notwithstanding the pendency of his motion to dismiss, but to date no answer has been filed. (*See* R. 4, Notice of Mandatory Initial Disc.) It is also apparent from Plaintiff's motion to compel that the parties have only recently begun to engage in discovery, and, for reasons more fully explained below, Firestone's discovery responses to date have been inadequate. Under these circumstances, the Court declines to convert Firestone's motion into a motion for summary judgment. The Court did not consider any of Firestone's outside evidence in deciding whether the amended complaint states a claim under Rule 12(b)(6).[4] *See* FED. R. CIV. P. 12(d).

  Firestone also argues that dismissal is appropriate because "Plaintiff has not come to court with clean hands." (R. 39, Am. Mem. in Supp. of Mot. to Dismiss at 1.) His argument is based on a comment Plaintiff allegedly made to him before filing suit, outlined in detail in Firestone's affidavit, expressing disbelief that Firestone was involved in the website, notwithstanding that Firestone's biographical information and mailing address in New York appeared on the website. (*Id.* at 12-13.) The "unclean hands" doctrine does not present a viable

---

[4] Notably, outside evidence can be considered in connection with deciding whether the Court has personal jurisdiction over a defendant. *See Siegel v. HSBC Holdings, plc*, 283 F. Supp. 3d 722, 728 (N.D. Ill. 2017) (observing that a court may "receive and weigh" affidavits and other outside evidence in determining whether it has personal jurisdiction over a party). Therefore, the Court did consider this evidence in connection with Firestone's request for dismissal under Rule 12(b)(2), addressed below.

basis to dismiss the complaint. Assuming the doctrine applies,[5] it "permits courts to deny equitable relief to parties who have themselves engaged in misconduct or acted in bad faith." *FDIC v. Urban P'ship Bank*, No. 17-CV-1517, 2018 WL 2021223, at *7 (N.D. Ill. May 1, 2018). But it would not impact a claim for legal remedies, like the monetary damages Plaintiff seeks here. *RBS Citizens, N.A. v. Sanyou Imp., Inc.*, No. 11 C 1820, 2011 WL 2712744, at *4 (N.D. Ill. July 13, 2011) ("The doctrine of unclean hands applies if a party seeking equitable relief is guilty of misconduct, fraud, or bad faith toward the party against whom relief is sought and the misconduct is connected to the transaction at issue in the litigation. Significantly, the doctrine only applies where the plaintiff seeks equitable relief." (internal citation omitted)).

Additionally, unclean hands is an affirmative defense on which a defendant bears the burden of proof. *Maui Jim, Inc. v. SmartBuy Guru Enters.*, No. 1:16 CV 9788, 2018 WL 509960, at *6 (N.D. Ill. Jan. 23, 2018) (observing that "[u]nclean hands . . . is purely an affirmative defense" (citation omitted)); *Manley v. Boat/U.S. Inc.*, No. 13-CV-5551, 2016 WL 1213731, at *4 (N.D. Ill. Mar. 29, 2016) (observing that the unclean hands doctrine is a "properly designated and often raised affirmative defense"). It is inappropriate to dismiss a complaint under Rule 12(b)(6) based on an affirmative defense unless the plaintiff "pleads [himself] out of court" by "admitting all the ingredients of an impenetrable defense" in the complaint itself. *John K.*

---

[5] Firestone cites entirely to Illinois case law addressing the unclean hands doctrine related to claims arising under Illinois law. (R. 39, Am. Mem. in Supp. of Mot. to Dismiss at 12-13.) Here, however, Plaintiff is raising a claim against Firestone under the federal Copyright Act. (R. 18, Am. Compl. ¶¶ 21-29.) There is a federal corollary to the unclean hands doctrine, but Firestone has not cited any federal case, nor could the Court locate any, applying the unclean hands doctrine to a claim under the federal Copyright Act. To the contrary, federal courts have questioned the applicability of the doctrine to such claims. *See Big Daddy Games, LLC v. Reel Spin Studios, LLC*, No. 12-CV-449-BBC, 2013 WL 12233949, at *16-17 (W.D. Wis. Apr. 10, 2013) (questioning applicability of the unclean hands doctrine to federal copyright claim); *Video Views, Inc. v. Studio 21, Ltd.*, No. 84 C 430, 1986 WL 12052, at *3 (N.D. Ill. Oct. 21, 1986) (finding "some doubt" about whether an unclean hands defense would apply to a federal copyright claim). The Court need not resolve this matter since Firestone's invocation of the doctrine does not entitle him to dismissal for the reasons stated above.

*Maciver Inst. for Pub. Policy, Inc. v. Schmitz*, 885 F.3d 1004, 1014 (7th Cir. 2018) (citation and alteration omitted). That is not the case here, as there is nothing in the amended complaint from which the Court could conclude that Plaintiff engaged in misconduct in connection with the infringing website that would preclude him from seeking equitable relief in this case. Indeed, Firestone's unclean hands argument relies entirely on extraneous information contained in his own affidavit. (*See* R. 39, Am. Mem. in Supp. of Mot. to Dismiss at 12; R. 28-2, Firestone Aff.) As stated above, this Court cannot consider outside evidence on a Rule 12(b)(6) motion, and the Court has already declined to convert the motion to one for summary judgment. The Court therefore does not consider this evidence,[6] and finds no basis to dismiss the amended complaint on grounds of "unclean hands." Firestone's request for dismissal under Rule 12(b)(6) is denied.

## B.    Personal Jurisdiction

In the same motion, Firestone also moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2). (R. 39, Am. Mem. in Supp. of Mot. to Dismiss at 13-14.) "Personal jurisdiction refers to a court's power to bring a person into its adjudicative process." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014) (citation and internal quotation marks omitted). When a defendant moves for dismissal under Rule 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction. *Citadel Grp, Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 760 (7th Cir. 2008). The Court can "receive and weigh" affidavits and other materials

---

[6] The Court notes that even if the unclean hands doctrine were properly invoked, Firestone is relying on a statement Plaintiff allegedly made to him in November 2017, shortly after Plaintiff first became aware of the website; the crux of the statement was that Plaintiff initially did not believe Firestone was involved with the infringing website. (*See* R. 28-2, Firestone Aff. at 2-3.) Firestone believes this statement proves that Plaintiff has no basis to bring a copyright claim against him. (*Id.*) However, in response Plaintiff points to evidence he obtained since November 2017 (which he submitted in support of his motion for preliminary injunction), showing that "to Plaintiff's surprise and continued disappointment, Firestone was very much responsible for the infringing site." (R. 41, Resp. to Mot. to Dismiss at 14; *see also* R. 22, Pl.'s Second Decl.)

outside the complaint in determining whether personal jurisdiction exists. *Siegel v. HSBC Holdings, plc*, 283 F. Supp. 3d 722, 728 (N.D. Ill. 2017). If the motion is decided on written materials without a hearing, the plaintiff need only make a *prima facie* case of personal jurisdiction. *Kipp v. Ski Enter. Corp. of Wisc., Inc.*, 783 F.3d 695, 697 (7th Cir. 2015). The Court must resolve any factual disputes in the plaintiff's favor. *N. Grain Mktg., LLC*, 743 F.3d at 491.

Because Plaintiff has asserted a federal copyright claim, the Court's subject matter jurisdiction rests on federal question. 28 U.S.C. § 1331; 28 U.S.C. § 1338. The Copyright Act contains no "special federal rule for personal jurisdiction," so the Court must "look to the law of the forum for the governing rule." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014); *see also* FED. R. CIV. P. 4(k)(1)(A) (providing that a federal court may properly exercise personal jurisdiction over a party "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located"). Under the Illinois long-arm statute, the Court can exercise jurisdiction over a defendant so long as it comports with the Due Process Clauses of the Illinois and federal Constitution. *See* 735 ILL. COMP. STAT. 5/2-209(c) ("A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States."). These two inquiries are coextensive. *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hous. Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010) (observing that "there is no operative difference" between the requirements of the Due Process Clauses of the Illinois and U.S. Constitutions). The crux of the inquiry under either Clause is whether a defendant had "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (citation and internal quotation marks omitted).

What level of contacts are required depends on the type of personal jurisdiction at issue: general or specific. *Daimler AG v. Bauman*, 571 U.S. 117, 126-27 (2014). General jurisdiction refers to a court's broad ability to hear "any and all" claims against a defendant whose contacts with the forum are so "continuous and systematic" that he is "essentially at home" in the forum state. *Id.* at 127. Specific jurisdiction refers to Court's ability to adjudicate a claim pertaining to an "activity or an occurrence" that takes place in the forum state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Plaintiff does not argue that Firestone, who apparently resides in China and has a mailing address in New York, is "at home" in Illinois, and instead focuses on specific jurisdiction. (R. 41, Resp. to Mot. to Dismiss at 5-11; R. 28-2, Firestone Aff.)

To exercise specific jurisdiction over a defendant, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). To analyze this issue, courts look to whether "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) [whether] the alleged injury arises out of the defendant's forum-related activities." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). In addition, the Court must ensure that haling the defendant into court in the forum would "comport with traditional notions of fair play and substantial justice." *Id.* For cases involving an intentional tort, "the inquiry focuses on whether the conduct underlying the claims was purposely directed at the forum state." *Id.* The test for determining whether a defendant has purposefully directed his or her activities at the forum state has three elements. *Id.* at 703. First, the defendant must have engaged in "intentional conduct (or 'intentional and allegedly tortious' conduct)." *Id.* Second, the conduct must have been "expressly

12

aimed at the forum state." *Id.* And finally, the defendant must know that the effects of the
allegedly intentional and tortious conduct "would be felt—that is, the plaintiff would be
injured—in the forum state." *Id.* The policy behind the purposeful-direction requirement is to
"ensure that an out-of-state defendant is not bound to appear to account for merely random,
fortuitous, or attenuated contacts with the forum state." *Id.* (citation and internal quotation marks
omitted).

The Court concludes that these requirements are satisfied. Copyright infringement is a
tort, *Peters*, 692 F.3d at 633, and here Plaintiff alleges that Firestone's infringement was
intentional, (R. 18, Am. Compl. ¶¶ 1, 10, 27). Plaintiff has submitted evidence showing that
Firestone and the other Defendants used the infringing website to directly target their activities
toward defendants in trademark cases brought in this District by the Chicago-based law firm
GBC. (R. 22, Pl.'s Second Decl.; R. 5-1, Website.) Indeed, public court documents reflect that
Firestone, an attorney licensed to practice in Illinois, has filed appearances on behalf of
defendants in trademark cases brought by GBC in this District approximately 10 times since
2016. *See, e.g., Monster Energy Co. v. P'ships & Unincorporated Ass'ns*, 17 C 414 (N.D. Ill.
filed Jan. 19, 2017); *NBA Props. Inc. v. P'ships & Unincorporated Ass'ns*, 16 C 11117 (N.D. Ill.
filed Dec. 6, 2016) *Burberry Ltd. v. P'ships & Unincorporated Ass'ns*, 16 C 10949 (N.D. Ill.
filed Nov. 30, 2016); *MCM Holding AG v. P'ships & Unincorporated Ass'ns*, 16 C 10593 (N.D.
Ill. filed Nov. 15, 2016); *Luxottica Grp. S.p.A v. P'ships & Unincorporated Ass'ns*, 16 C 6850
(N.D. Ill. filed June 30, 2016); *Levi Strauss & Co. v. P'ships & Unincorporated Ass'ns*, 16 C
4690 (N.D. Ill. filed Apr. 27, 2016); *Richemont Int'l SA v. P'ships & Unincorporated Ass'ns*, 16
C 4085 (N.D. Ill. filed Apr. 6, 2016); *Richemont Int'l SA v. Liang*, 16 C 1227 (N.D. Ill. filed Jan.
27, 2016); *Luxottica Grp. S.p.A v. Hao Li*, 16 C 487 (N.D. Ill. filed Jan. 14, 2016). Plaintiff

13

attests that he also regularly represents defendants in trademark cases brought by GBC in this District, and he claims that Defendants' misuse of his copyrighted materials has injured him by diverting clients who may have otherwise contracted for his services in this District. (R. 5, Pl.'s Decl. ¶¶ 2, 7.)

Under these circumstances, the Court finds it appropriate to exercise personal jurisdiction over Firestone with respect to Plaintiff's copyright claim.[7] *See Burger King Corp.*, 471 U.S. at 474 ("[T]he Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed."); *Illinois v. Hemi Grp., LLC*, 622 F.3d 754, 758 (7th Cir. 2010) (holding that out-of-state defendant had sufficient contacts with Illinois to justify exercise of personal jurisdiction, where defendant had "purposefully avail[ed] itself of doing business in Illinois" through maintenance of website); *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 906-08 (N.D. Ill. 2015) (concluding that personal jurisdiction existed over nonresident defendant, where defendant's alleged trademark violations caused injury to plaintiff in Illinois); *Deckers Corp. v. Does 1-500*, No. 1:11 CV 00010, 2011 WL 4929036, at *2-3 (N.D. Ill. Oct. 14, 2011) (concluding that personal jurisdiction existed over China-based defendants operating online stores offering to sell counterfeit products to the United States, including Illinois). For these reasons, the motion to dismiss is denied.

## II.   Firestone's Motion to Vacate

In his second motion, Firestone moves to vacate the preliminary injunction pursuant to Federal Rule of Civil Procedure 60(b). (R. 29, Mot. to Vacate at 1.) He argues that Plaintiff is

---

[7] The Court makes no determination about whether personal jurisdiction exists over Chen and Liu, as they have never appeared in this case. Firestone again purports to raise arguments on their behalf, (R. 43, Reply in Supp. of Mot. to Dismiss at 4-5), but as outlined above in footnote 3, he has no authority to do so.

"not entitled to [a] TRO to freeze Defendant's assets," that the preliminary injunction was "granted without due process of notice," and that Plaintiff failed to demonstrate an entitlement to preliminary injunctive relief. (R. 40, Am. Mem. in Supp. of Mot. to Vacate at 10-14.)

Rule 60(b) permits a party to seek relief from an order or judgment based on several circumstances, including—as invoked by Firestone here—"mistake, inadvertence, surprise, or excusable neglect," "fraud . . . , misrepresentation, or misconduct by an opposing party," or "any other reason that justifies relief."[8] (*See* R. 29, Mot. to Vacate at 1 (citing FED. R. CIV. P. 60(b)(1), (3), and (6).) Rule 60(b) "is not an alternate route for correcting simple legal errors," however, and instead "it exists to allow courts to overturn decisions where special circumstances justify an extraordinary remedy." *Kennedy v. Schneider Elec.*, 893 F.3d 414, 420 (7th Cir. 2018) (citation and internal quotation marks omitted). "The district court has great latitude in making a Rule 60(b) decision because that decision is discretion piled on discretion." *Bakery Machinery & Fabrication, Inc. v. Traditional Baking, Inc.*, 570 F.3d 845, 848 (7th Cir. 2009) (citation and internal quotation marks omitted).

---

[8] The Court notes that Firestone invokes Rule 60(b)(1), (3), and (6) without linking his arguments to any of these specific provisions. (*See* R. 29, Mot. to Vacate at 1; R. 40, Am. Mem. in Supp. of Mot. to Vacate at 3-14.) Plaintiff argues that Firestone's arguments are so undefined that they should be deemed waived. (R. 42, Resp. to Mot. to Vacate at 3-4.) In the interest of justice, the Court declines to deem Firestone's arguments waived and instead has given them the weight that they deserve. To add to the confusion, Firestone has labeled his motion as being brought under Rule 60(b), even though it was filed within 28 days of the Court's order granting the preliminary injunction. *See* FED. R. CIV. P. 59, 60. The U.S. Court of Appeals for the Seventh Circuit has held that whether a motion for reconsideration should be analyzed under Rule 59 or Rule 60 depends on the substance of the motion, not necessarily the label affixed to it. *Obriecht v. Raemisch*, 517 F.3d 489, 493 (7th Cir. 2008). Assuming Rule 59 were to apply, that Rule permits a court to amend an order or judgment only if the movant demonstrates a manifest error by the Court or presents newly discovered evidence. *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). "A manifest error is not demonstrated by the disappointment of the losing party," and instead refers to the "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Id.* (citation and internal quotation marks omitted). The decision to grant or deny a Rule 59(e) motion is entrusted to the "sound judgment" of the Court. *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012). For the reasons explained herein, Firestone has not demonstrated an entitlement to relief under either Rule 59 or Rule 60.

Firestone has not demonstrated an entitlement to relief under Rule 60(b). He first argues very generally that a TRO may be issued *ex parte* only where there are exigent circumstances, and that Plaintiff failed to show such circumstances here. (R. 40, Am. Mem. in Supp. of Mot. to Vacate at 10.) Federal Rule of Civil Procedure 65 expressly authorizes the issuance of a TRO without notice to the adverse party. *See generally* FED. R. CIV. P. 65(b)(1); *H-D Mich., LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 845-46 (7th Cir. 2012). Plaintiff met the requirements for *ex parte* relief based on the evidence he presented of Defendants' ongoing misuse of his copyrighted materials. (*See* R. 5, Pl.'s Decl.; R. 5-1, Website.) The Court continues to believe that ruling was appropriate. Additionally, the TRO expired months ago and has been superseded by the preliminary injunction, which was issued by the Court on January 18, 2018, after notice to Firestone; as such, his arguments about the issuance of the TRO carry little weight. *See FTC v. Phx. Avatar, LLC*, No. 04 C 2897, 2004 WL 1746698, at *14 n.8 (N.D. Ill. July 30, 2004) (holding that party's arguments challenging the *ex parte* nature of a TRO were "moot" in light of the fact that a preliminary injunction had subsequently issued after party was given an opportunity to be heard).

Firestone relatedly argues that he did not receive proper notice of the motion for preliminary injunction, (R. 40, Am. Mem. in Supp. of Mot. to Vacate at 11), but the Court disagrees. In a sworn affidavit submitted along with the motion, Firestone acknowledges that he received notice of the motion on January 12, 2018. (R. 29-2, Firestone Aff. at 2.) This was more than sufficient notice of the January 18, 2018, hearing. *See* N.D. ILL. L.R. 5.3(a)(1) (providing that service of motion must be accomplished no later than the "second business day preceding the date of presentment"). Firestone complains that the day he was served was a "Saturday in China," and that he had plans to travel to Indonesia on the date the motion was to be heard to

"giv[e] a speech to investors on behalf of a US public company." (R. 29-2, Firestone Aff. at 2.)
He believes that it was unfair for the Court to proceed with the motion on January 18, 2018,
under these circumstances. (*Id.*) However, Firestone did not file a request for an extension of
time to respond to the motion for preliminary injunction or otherwise communicate to the Court
that he wished to respond to the motion but was unable to do so in the time allotted. Instead, he
simply failed to appear. At the hearing, Plaintiff presented evidence that he was suffering
ongoing injury to his rights under federal copyright law. (R. 22, Pl.'s Second Decl.) Based on
Plaintiff's showing, the Court issued the preliminary injunction, and the Court continues to view
that ruling as appropriate.[9]

Firestone's final argument is that the Court had no authority to restrain his bank account
associated with a PayPal account linked to the allegedly infringing website. (R. 40, Am. Mem. in
Supp. of Mot. to Vacate at 12-14.) In support, he relies entirely on the Illinois Code of Civil
Procedure and Illinois cases interpreting its provisions. (*Id.* at 13-14.) His reliance on state law
misses the mark, as this is a federal case raising a federal claim, and it is thus governed by
*federal* law. *Senisais v. Fitzgerald*, 940 F. Supp. 196, 200 (N.D. Ill. 1996) ("[Plaintiff] has filed
his complaint in federal district court seeking redress for the alleged violation of federal rights. In
this court, the *Federal* Rules of Civil Procedure govern, not the Illinois Code of Civil
Procedure." (emphasis in original)). The preliminary injunction was issued pursuant to Federal

---

[9] Firestone does not clearly explain what arguments he would have raised in opposition to the motion had
he appeared or been given additional time to respond in writing. In his present filings, he offers general
denials and again points to Plaintiff's statement allegedly made to him in November 2017 that Plaintiff
initially did not believe Firestone was involved in the creation of the website. (R. 40, Am. Mem. in Supp.
of Mot. to Vacate at 4-5; R. 29-2, Firestone's Aff. at 1-8; R. 44, Reply in Supp. of Mot. to Vacate at 3-5.)
For the reasons explained in footnote 6, this argument would not have convinced the Court to deny
Plaintiff's request for preliminary injunctive relief. Plaintiff has offered evidence of Firestone's
involvement in the website, which the Court finds more than sufficient to establish that Plaintiff has
"some likelihood of success on the merits" on his copyright claim. *Planned Parenthood of Ind. & Ky.,
Inc. v. Comm'r of Ind. State Dep't of Health*, 896 F.3d 809, 816 (7th Cir. 2018).

Rule of Civil Procedure 65 and the federal Copyright Act, which expressly grants federal courts authority to issue "temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). Firestone's arguments about what Illinois law might require are unavailing.

Firestone is correct as a general matter that prejudgment asset restraints are not proper simply to establish a fund from which a later award of money damages can be satisfied. *See Grupo Mexicano de Desarollo, S.A. v. All. Bond Fund*, 527 U.S. 308, 325-26 (1999). But here Plaintiff is seeking the equitable remedy of disgorgement of profits obtained from the infringing website. (R. 18, Am. Compl. at 14.) The Copyright Act expressly authorizes this equitable remedy, 17 U.S.C. § 504(b), and the Court can permissibly freeze assets to protect a plaintiff's equitable remedies. *See Grupo Mexicano*, 527 U.S. at 325 (holding that asset freeze pending outcome of case is proper where plaintiff seeks equitable relief); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) ("[S]ince the assets in question . . . were the profits of the [defendants] made by unlawfully stealing [the plaintiffs'] services, the freeze was appropriate and may remain in place pending final disposition of this case."); *Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 13 C 07621, 2013 WL 12314399, at *2 (N.D. Ill. Oct. 31, 2013) ("[T]here is an exception to the general ban on prejudgment asset restraint where an equitable remedy is sought.").

Firestone could potentially obtain an exemption from the asset freeze if he presented "documentary proof" that the bank account at issue did not contain any proceeds of infringing activities. *Luxottica USA LLC v. The P'ships & Unincorporated Ass'ns Identified On Schedule "A"*, No. 14 C 9061, 2015 WL 3818622, at *5 (N.D. Ill. June 18, 2015) (citation omitted). He has made no attempt to make such a detailed showing, however, and instead argues generally

that this Court lacks legal authority to restrain his bank account. (R. 40, Am. Mem. in Supp. of Mot. to Vacate at 12-14; R. 44, Reply in Supp. of Mot. to Vacate at 8-9.) The Court is unpersuaded by that argument and finds the freeze order an appropriate measure to protect Plaintiff's right to obtain profits associated with the website should he prevail in this action.

For these reasons, the Court finds no basis to vacate the preliminary injunction. Firestone's motion is denied.

### III.     Plaintiff's Motion to Compel

That leaves Plaintiff's motion to compel discovery. (R. 45, Mot. to Compel.) In support of the motion, Plaintiff asserts that he served Firestone requests to admit, interrogatories, and requests for the production of documents on January 7, 2018. (*Id.*; *see also* R. 45-2, Disc. Reqs.) As of the date the motion to compel was filed—March 22, 2018—Firestone had only answered the requests to admit. (*See* R. 45-1, Paluch-Epton Decl. ¶¶ 3-5.) After the motion to compel was filed, Firestone filed a brief response to the motion, along with responses to the interrogatories and requests for production. (R. 49, Resp. to Mot. to Compel; R. 51-1, Disc. Resps.) However, Plaintiff deems several of Firestone's responses inadequate. (R. 51, Reply in Supp. of Mot. to Compel.)

"The district court exercises significant discretion in ruling on a motion to compel." *NEXT Payment Sols., Inc. v. CLEAResult Consulting, Inc.*, No. 17 C 8829, 2018 WL 3637356, at *16 (N.D. Ill. July 31, 2018) (citation omitted). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the

proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). "In ruling on motions to compel discovery, [federal] courts have consistently adopted a liberal interpretation of the discovery rules." *Resicom Custom Painting & Maint., Inc. v. Prof'l Retail Servs., Inc.*, No. 14 CV 09190, 2017 WL 3951603, at *1 (N.D. Ill. Sept. 8, 2017) (citation omitted). "[T]he burden rests upon the objecting party to show why a particular discovery request is improper." *Id.* (citation and internal quotation marks omitted).

The Court has carefully reviewed Firestone's discovery responses and finds that they are inadequate in certain respects. Interrogatory No. 3 asks for certain information about clients referred to Firestone by Liu or Chen, including but not limited to clients referred through the website. (R. 51-1, Disc. Resps. at 3.) Firestone answered each question, "None that I know of. I was unaware of the website." (*Id.*) However, as drafted, the question calls for information about *other* clients referred to Firestone by Chen and Liu besides those obtained through the website. Firestone admits in his other filings that he received client referrals from Liu. (R. 29-2, Firestone Aff. at 5 ("Liu is a former client. Liu refers business, just like many other satisfied clients.").) Plaintiff is trying to get to the bottom of the arrangement among the Defendants, and he is entitled to this information. Firestone is directed to provide a full response to Interrogatory No. 3 identifying the clients and other information requested by Plaintiff.

Interrogatory No. 5 requests information about financial accounts that "receive payments or hold assets" for Firestone. (R. 51-1, Disc. Resps. at 4.) Firestone provides the following nonsensical response: "I do not receive any money from Defendant. It was small sums so I had him pay poor people in Shenzhen [sic] I am an orthodox Jew who believes in tithes[.] All the money which was about $2000 a month went to desperate and poor foreigners and Chinese in Shenzhen." (*Id.*) The interrogatory is asking about *Firestone's* financial accounts, and

Firestone's answer is entirely unresponsive. He is directed to provide a full and complete response to Interrogatory No. 5. The Court has reviewed Firestone's other interrogatory responses and finds them adequate.

With respect to the Request for Documents, the Court finds Firestone's responses to Request Nos. 2, 3, and 4 inadequate. As to Request Nos. 2 and 4, he purports to invoke attorney-client and work product privileges in response to these requests, but he has not produced any privilege log for Plaintiff and/or the Court to determine what documents he is withholding, and whether the privilege actually applies. "The burden of proof is on the party claiming privilege." *BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, No. 15 C 10340, 2018 WL 3689045, at \*2 (N.D. Ill. Aug. 3, 2018). Whether a privilege exists is a "fact-intensive inquiry," and "cannot be solved by simply looking to the identity of the sender or recipient of a communication[.]" *Id.* This includes the attorney-client privilege, as the "lawyer-client relationship, itself, does not create a cloak of protection which is draped around all occurrences and conversations which have any bearing, direct or indirect, upon the relationship of the attorney with his client." *Id.* (citations and internal quotation marks omitted). Firestone's blanket claim of privilege is thus entirely inadequate. *See* FED. R. CIV. P. 26(b)(5)(A) (providing that when a party withholds information on the basis of privilege, the party must describe the nature of the withheld information in detail); *Monco v. Zoltek Corp.*, No. 17 C 6882, 2018 WL 3427915, at \*2-3 (N.D. Ill. 2018) (outlining a party's obligation to provide a privilege log).

As to Request No. 3, Plaintiff seeks information about Firestone's bank accounts, including an account linked to Firestone's WeChat account, and Firestone responds that his financial information is "confidential" and "not pertinent to this case." (R. 51-1, Disc. Resps. at 15.) There is no general discovery privilege for financial records, although if necessary the

parties can seek a protective order from this Court to designate sensitive materials as "confidential" or for "attorneys' eyes only." Plaintiff should not be permitted to conduct a fishing expedition into Firestone's finances, but the Court finds that information about the accounts is directly relevant, as Plaintiff has produced evidence suggesting that Firestone used at least one account as part of the alleged scheme to attract clients through the website. (*See* R. 22, Pl.'s Second Decl.; R. 22-4, WeChat Exchange; 22-45, WeChat Exchange.) Plaintiff is seeking to obtain lost profits as part of this lawsuit, and he is entitled to information about these accounts.[10] Again, the parties may present the Court with an agreed protective order (or Firestone may seek one if there is no agreement) protecting these documents from general disclosure.

For these reasons, Firestone is directed to provide a full and complete response to Request Nos. 3-5 and/or produce a privilege log outlining in detail what responsive documents he is withholding and the basis for his assertion of privilege. The Court has reviewed Firestone's other responses to the document requests and finds them adequate. The Court has similarly reviewed his responses to the Requests to Admit and finds them adequate as well.

In closing, it has become clear to the Court after reviewing the many filings made in connection with these motions that, in addition to written discovery, Plaintiff will need to take Firestone's sworn deposition in order to obtain meaningful information about his relationship with Liu and Chen and his potential involvement with the website. Accordingly, in addition to responding to the discovery directed above, Firestone is ordered to appear for a deposition either in Chicago or Hong Kong within 30 days, on a date and time to be mutually agreed upon by the

---

[10] Under the Copyright Act, to determine the "infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). Firestone's revenues will thus be relevant to this case.

parties. For the convenience of the parties, the Court will also permit this deposition to occur by video if the parties choose. At this point the Court will not award attorneys' fees as requested by Plaintiff, (*see* R. 51, Reply in Supp. of Mot. to Compel at 3), but Firestone is cautioned that his failure to fully cooperate in discovery in the future may result in adverse action, up to and including entry of a default judgment, an award of attorneys' fees, and/or imposition of monetary sanctions. *See* FED. R. CIV. P. 37(b)-(d).

## CONCLUSION

For the foregoing reasons, Firestone's motion to dismiss and motion to vacate the preliminary injunction (R. 28, 29) are DENIED. He is ORDERED to answer the amended complaint on or before September 26, 2018. Plaintiff's motion to compel (R. 45) is GRANTED in part and DENIED in part as stated herein. Firestone is ORDERED to provide discovery responses in accordance with this order on or before September 26, 2018. He is further ORDERED to sit for his deposition on or before October 12, 2018, at a date and time to be agreed upon by the parties. The parties shall appear for a status hearing on October 3, 2018, at 9:45 a.m. They are directed to reconsider their respective settlement positions in light of this opinion and to exhaust all efforts to settle this case.

ENTERED:

**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: September 5, 2018**